THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TREVOR WRIGHT, | § | |
| | § | |
| *Plaintiff* | § | |
| | § | Civil Action No. 21-cv-300 |
| v. | § | |
| | § | |
| UNION PACIFIC RAILROAD | § | |
| COMPANY, | § | |
| | § | |
| *Defendant* | § | JURY TRIAL DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF THIS COURT:**

COMES NOW Trevor Wright ("Plaintiff" or "Mr. Wright") filing this, his Original Complaint wherein he describes the unlawful employment practices Defendant Union Pacific Railroad Company subjected him to during his employment based on his association with a disability person (his daughter), his FMLA requests and use, and his race (African-American). In support of his causes of action, Mr. Wright respectfully shows the Court as follows:

### I.   JURISDICTION, PARTIES, AND VENUE

1. This Court has jurisdiction over the causes of action alleged by Plaintiff pursuant to 28 U.S.C. §1331, 29 U.S.C. §§2601-2654, The Family and Medical Leave Act ("FMLA" or "the Act"), 42 U.S.C. §§12111-12117 *et. seq*., The Americans with Disabilities Act as amended ("ADAAA"), the anti-retaliation regulations set forth by the FMLA and the ADAAA, Title VII, 42 U.S.C. §2000e *et*. *seq*. and 42 U.S.C. §1981 ("Section 1981")

2. Plaintiff, Trevor Wright is African-American. He is associated with a disabled person, his daughter, which qualified Mr. Wright for FMLA leave from 2006-2020 and at all times relevant to the facts and causes of action stated herein. Mr. Wright's daughter is presently 15 years old, and

she has suffered from asthma (her disability) since she was two. At all times relevant to the facts and causes of action stated herein, Mr. Wright requested, qualified for and exercised FMLA leave based on his daughter's disability.

3. At all times relevant to Plaintiff Trevor Wright's claims herein, his employment with Defendant was protected by the FMLA, the ADAAA, Title VII and 42 U.S.C. §1981. Mr. Wright was, at all relevant times, an employee within the meaning of each of these statutes.

4. Defendant, Union Pacific Railroad Company ("Defendant" or "UP") is a corporation operating in Texas and was at all times relevant to the facts and claims in this Complaint, Mr. Wright's private-sector employer within the meaning of the FMLA, the ADAAA, Title VII, and Section 1981.

5. Plaintiff intends to serve Defendant with this Complaint by and through its registered agent.

6. The employment practices alleged to be unlawful within this lawsuit were committed within the Southern District of Texas, Houston Division. Venue is appropriate in this Court.

## VICARIOUS LIABILITY--RESPONDEAT SUPERIOR

7. Whenever in this pleading it is alleged that Defendant did any act or thing, or failed to do any act or thing, it is meant that Defendant's officers, owners, servants, employees, or representatives and management did such act or thing, or failed to do such act or thing, or that such act or thing or omission was done in the course and scope of that person's employment with Defendant, or in the furtherance of Defendant UP's interests, or with the full authorization, permission, tolerance, and/or ratification of Defendant, or was done by an authorized member of management of Defendant or was done in the normal routine of the accepted, tolerated, or permitted conduct, customs, and/or practices of Defendant's officers, owners, servants, employees,

management and/or representatives.

8. All conditions precedent to the filing of this lawsuit have occurred.

## II. EXHAUSTION OF ADMINSTRATITIVE REMEDIES

9. Mr. Wright filed an original Charge of Discrimination ("Charge") with the United States Equal Employment Opportunity Commission (hereinafter "EEOC") on or about October 19, 2020, wherein he averred that Defendant engaged in discrimination against him because of his association with his disabled daughter by penalizing him for his use of FMLA leave which was required because of his daughter's disability/asthma, a chronic medical condition that has substantially affected her breathing. The EEOC assigned Mr. Wright's Charge the No. 460-2020-04901.

10. The EEOC issued Mr. Wright a Right-to-Sue letter on November 5, 2020, and he timely files suit in federal court within 90 days of his receipt thereof.

## III. FACTUAL BACKGROUND

11. Defendant hired Mr. Wright in March of 2004 to work as a fulltime railroad conductor in Avondale, LA and in 2013 transferred to the Houston Service Unit in Houston, Texas. As part of the application process, Mr. Wright disclosed to Defendant that his daughter had a disability (asthma), a condition that his daughter suffered from since she was 2 years old, and which significantly affects her ability to breathe. Based on the symptoms and needs of his daughter's disability, Mr. Wright requested intermittent FMLA leave from Defendant beginning in December 2019.

12. On December 31, 2019, Mr. Wright requested and exercised FMLA leave because his daughter suffered an asthmatic flare-up that night and Mr. Wright needed to monitor her breathing. As allowed by his FMLA certification and his daughter's medical condition, Mr.

Wright self-treated his daughter at home.

13. That same night, Defendant surveilled Mr. Wright at his home to determine whether Mr. Wright had left his home while exercising his FMLA leave.

14. Upon information and belief, Defendant has a policy of surveilling its employees who exercise FMLA leave on or close to holidays. On this occasion, it was New Year's Eve.

15. Mr. Wright did not leave his house on December 31, 2019. He cared for his daughter in line with his FMLA request.

16. Nonetheless, on January 1, 2020, Defendant notified Mr. Wright that he was being taken out of service without pay because of his December 31st FMLA use.

17. Defendant told Mr. Wright that he was only allowed to use his FMLA leave to attend doctor appointments with his daughter; however, this was untrue. The truth was that, according to Wright's medical documentation and the FMLA regulations, Mr. Wright was allowed to self-treat his daughter from his home as he had done on December 31, 2019.

18. Still, Wright's supervisor, Anthony H., told Mr. Wright that Defendant was charging him with violating Defendant's reporting and compliance rules/policies because he had abused his FMLA leave.

19. Defendant did not consider the FMLA regulations, Wright's daughter's disability, or give Mr. Wright an opportunity to explain or recertify his FMLA needs and leave on December 31, 2019 when Defendant decided to pull Mr. Wright out of service with no pay on January 1, 2020.

20. Instead, Mr. Wright was told an investigatory hearing would be held to determine the status of his 16-years of employment with Defendant. The hearing, however, (initially scheduled in January 2020) was postponed multiple times over the course of three (3) months.

21. Finally, in late March 2020 and after Mr. Wright had been without work and pay for 3 months, Defendant sought recertification of Wright's FMLA leave which would support his December 31, 2019 FMLA leave.

22. Despite having provided Defendant with these documents beginning in 2006 and every year thereafter to establish his need for intermittent FMLA leave based on his daughter's chronic medical condition and its derivative medical symptoms, Mr. Wright again provided Defendant with the requested documentation.

23. After that, on or about May 6, 2020, John Carroll (my local union chairman) told Mr. Wright that Defendant had decided not to move forward with its investigation against him but that Mr. Wright was required to retake an exam to qualify to return to work.

24. With no other choice, Mr. Wright took and passed the exam. He was then told to report to Mr. Perez's (Manager of Operating Practices) office on May 19, 2020.

25. When Mr. Wright reported to the meeting with Mr. Perez, Mr. Perez told him that he was required to sign documents—which he had never seen before—to keep his job and return to work.

26. In response, Mr. Wright asked whether he could have time to review the documents but Mr. Perez told him no. Mr. Perez told Mr. Wright that he needed to sign the documents at that moment so that Mr. Perez could return the documents to Labor Relations right away.

27. Based on Mr. Perez's representations, Mr. Wright reasonably believed that he had no choice but to sign the documents—whether or not he had sufficient to time to read or understand them—to keep his job. After all, he had then been out of work for 5 months and was desperate to return and earn wages.

28. Under duress and without understanding what he was signing, Mr. Wright signed

the documents Mr. Perez presented him but later discovered that those documents seemed to indicate that Mr. Wright did not wish to pursue a claim against Defendant for the five and a half months that Defendant had pulled him out of service and effectively suspended him without pay because of his December 31, 2019 FMLA leave – but this was untrue.

29. The documents Mr. Wright was forced to sign in early May 2020 did not reflect Wright's true desire to collect damages Defendant's actions had caused him over the five and a half months he was wrongfully suspended without pay and thereafter.

30. Further, when Mr. Wright returned to work, Mr. Wright discovered he was not the only African-American worker who Defendant had surveilled, pulled out of service and/or terminated because of FMLA leave based on a chronic medical condition.

31. Mr. Wright learned that Defendant had recently fired three other black employees who exercised FMLA leave based on their own or their family member's chronic medical condition (like him). Besides Wright, these employees included Edwin Darby, Corwin Haynes and Bronson Jackson.

32. What's worse, in late 2020, Mr. Wright also learned that he did not qualify for FMLA leave in 2021 based on the low number of days he was able to work in 2020 due to Defendant's unlawful suspension of his employment on January 1, 2020 through May 2020.

33. Upon information and belief, Defendant does not subject its white employees, who have been granted FMLA leave, to the same discipline, consequences, scrutiny and surveillance that it does its black employees who have been "approved" for FMLA leave.

34. Upon information and belief, White employee T. Peden, for example, who also requested and was granted FMLA during his employment with Defendant took over 100 days of FMLA time off for "treatment only" care in 2018 but, upon information and belief, was not

questioned or surveilled about his FMLA usage in 2018 like Mr. Wright was in 2019 and Corwin Haynes or Bronson Jackson were in 2018.

35. Further, upon information and belief, when White employee T. Peden's FMLA was questioned in 2020, Defendant immediately gave T. Peden an opportunity to recertify and justify his questioned-FMLA leave, and Defendant brought him back to work less than a week later.

36. Upon information and belief, Defendant's White employees like T. Peden enjoy FMLA leave without scrutiny and surveillance or with less scrutiny and surveillance, and as a result, they are able to maintain their employment with Defendant.

37. Upon information and belief, Defendant's policy that subjects its employees to surveillance when FMLA leave is taken close to or around holidays especially adversely impacts black employees who (1) more often suffer from chronic conditions and (2) require FMLA leave at unpredictable times including days close to or around the holidays because of the typical symptoms of chronic conditions which often time include unpredictable flare-ups.

38. Defendant's scrutiny and disparate treatment towards its employees who are black and have applied for or have been granted FMLA benefits has resulted in discriminatory suspension and/or terminations of black employees like Plaintiff Trevor Wright.

## IV.   CAUSES OF ACTION

**A.   Interference, Discrimination and Retaliation in Violation of The FMLA**

39. The foregoing paragraphs are incorporated herein as if recited verbatim for all causes of action set forth below:

40. Section 2612(a)(1)(c) of the FMLA entitles employees to up to twelve weeks of leave during any twelve-month period for certain reasons including the spouse or child of the employee who has a serious health condition such as asthma.

41. Section 825.115 provides that an employee like Plaintiff, whose daughter is diagnosed with a chronic condition ("*e.g.*, asthma, diabetes, epilepsy, etc.") "qualif[ies] for FMLA **leave even though the employee or the covered family member does not receive treatment from a health care provider during the absence**, and even if the absence does not last more than three consecutive, full calendar days." 29 CFR 825.115(f).

42. Defendant's discriminatory and retaliatory treatment (*i.e.*, its suspension of Plaintiff's employment) toward Plaintiff based on his request(s) for medical leave and his actual medical leave under the FMLA on or about December 31, 2019 violate the FMLA. The FMLA protects individuals whose spouse or child have a chronic condition like Plaintiff's daughter and provides for individuals with a chronic condition like Plaintiff's daughter to be able to self-treat and maintain their jobs.

43. Defendant's interference (surveillance, suspension, termination of employment) with Plaintiff's protected leave under the Act violate the FMLA.

44. At all times relevant to the facts and causes set forth by this Complaint, Mr. Wright was an eligible employee under the FMLA, Defendant was an employer as defined by the FMLA, Mr. Wright was entitled to the FMLA leave about which he complains, he gave notice to Defendant of his intention and right to FMLA leave, Defendant denied him benefits to, which he was expressly entitled under the FMLA, and suspended his employment.

45. Section 2615(a) forbids an employer from retaliating against employees for exercising their right to take the statutorily protected leave.

46. Defendant retaliated against Mr. Wright for exercising his FMLA rights when it, among other things, charged him with workplace rule violations for using FMLA leave and removed him from service for supposed violations, forced him to defend himself from such charges and ultimately suspended his employment for the supposed rule violations.

47. Defendant's acts of interference, discrimination and retaliation were intentional, continuous and done in bad faith in spite of Plaintiff's protected status and rights. Defendant, through its agents, supervisors and/or employees, discriminated against Plaintiff based on his FMLA requests and FMLA leave, which led to the diminution and impairment in whole or part, of his wages, benefits, promotions, privileges, and terms and conditions of employment. The above-described acts of Defendant's part caused Plaintiff substantial injury and damage.

48. As a direct and proximate result of Defendant's willful, knowing and intentional discrimination against him, Plaintiff has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish. Plaintiff is thereby entitled to general, compensatory and liquidated damages in amounts to be proven at trial.

49. As herein also alleged, Defendant subjected Plaintiff to retaliation in the form of unwarranted scrutiny, discipline, a loss of benefits and termination.

50. Further, Defendant had no legitimate business reasons for any of its acts of discrimination, interference and/or retaliation.

51. The above-described acts on Defendant's part were undertaken in violation of the FMLA and its anti-retaliation regulations, which proximately caused Plaintiff substantial injuries and damages.

52. Defendant's acts were malicious, reckless, and intentional and consisted of discrimination of a continuous nature.

53. As a direct and proximate result of Defendant's willful, knowing and intentional discrimination against him, Plaintiff has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress. Plaintiff is thereby entitled to general, compensatory and liquidated damages in amounts to be proven at trial.

54. Any contract, agreement or documentation which Defendant alleges that Plaintiff entered into or signed, which prevent Plaintiff's FMLA claims herein is void and should not be considered because Plaintiff signed it under duress.

B. **Race Discrimination pursuant to Title VII and 42 U.S.C. §1981**

55. Plaintiff repeats and re-alleges by reference each and every allegation contained in the paragraphs above and incorporates the same herein as though fully set forth.

56. Defendant, through its agents, supervisors, or employees violated Plaintiff's civil rights in violation of Title VII and 42 U.S.C. §1981 by intentionally and/or unintentionally interfering with Plaintiff's employment because of his race (African-American). Defendant's violations include but are not limited to, racial profiling, targeting and surveillance of its black employees while taking FMLA leave – which ultimately lead to loss wages, benefits and employment for its African-American employees exercising legitimate medical leave.

57. This intentional interference consisted of discrimination of a continuous nature.

58. Defendant, through its agents, supervisors, or employees discriminated against Plaintiff based on his race, which led to the loss and impairment in whole or part, of the wages, benefits, promotions, privileges, and terms and conditions of Plaintiff's employment.

59. The above-described acts on Defendant's part caused Plaintiff substantial injury and damage.

60. The above-described acts on Defendant's part were malicious, reckless, and intentional and consisted of discrimination of a continuous nature.

C. **Disability Discrimination pursuant to The Americans with Disabilities Act as Amended**

61. Plaintiff repeats and re-alleges by reference each and every allegation contained in the paragraphs above and incorporates them here as though fully set forth.

62. Plaintiff is protected under the ADAAA because of his daughter who is disabled. Plaintiff's daughter suffers from a chronic disease (asthma) that substantially affects her ability to breathe. Further Plaintiff's daughter has a history and record of disability and/or Defendant perceived her as disabled and/or as having a record of disability.

63. Throughout Plaintiff's employment, Plaintiff disclosed his association with a disabled person to Defendant. Defendant had full knowledge of Plaintiff's association with his daughter and her disability from 2006 through the present time.

64. Defendant, through its agents, supervisors, or employees violated Plaintiffs civil rights in violation of the Title I of the Americans with Disabilities Act ("ADA"), by intentionally interfering with Plaintiff's employment because of his association with his disabled daughter which required him to exercise FMLA leave.

65. Defendant violated Plaintiff's rights under the ADA by discriminating and harassing him based on his association with his disabled daughter.

66. Defendant, through its agents, supervisors, or employees violated Plaintiffs civil rights in violation of the Title I of the Americans with Disabilities Act ("ADA"), by refusing to reasonably accommodate him and refusing, in good faith, to engage in the interactive dialogue concerning his association with his disabled daughter which required him to exercise FMLA leave.

67. Further, the failure of UP to consider a reasonable accommodation, such as a policy exception or a request for recertification to the alleged FMLA violation, in light of Plaintiff's daughter's disability and doctor's statements was a violation of the law.

68. Defendant's discrimination, through its agents, supervisors, or employees, led to the loss and impairment in whole or part, of the wages, benefits, promotions, privileges, and terms and conditions of Plaintiff's employment.

69. Defendant's acts were malicious, reckless, and intentional and consisted of discrimination of a continuous nature.

70. As a direct and proximate result of Defendant's willful, knowing and intentional discrimination against him, Plaintiff has suffered and will continue to suffer actual damages, pain and suffering, and extreme and severe mental anguish and emotional distress. Plaintiff is thereby entitled to general, compensatory and liquidated damages in amounts to be proven at trial.

## V.   DAMAGES

71. Because of Defendant's discrimination, retaliation and interference, Plaintiff has suffered, suffers, and will continue to suffer economic losses including past and future lost wages and benefits as well as humiliation, mental anxiety and stress, and other damages. Accordingly, Plaintiff seeks all general, special, incidental, liquidated and consequential damages all of which amounts will be proved at trial.

72. Additionally, because of Defendant's unlawful and discriminatory conduct, it has been necessary for Plaintiff to retain the undersigned attorney to represent him in the causes of actions set forth herein. Further, Plaintiff has agreed to pay his attorney reasonable attorney's fees for the preparation and trial of these causes.

73. As a further consequence of Defendant's unlawful and discriminatory conduct, Plaintiff has incurred out-of-pocket expenses, which include litigation costs and other expenses to preserve his ability to earn a living. Accordingly, Plaintiff seeks all general, special, incidental and consequential damages as shall be proven at trial.

74. Plaintiff also seeks pre-judgment interest at a rate commensurate with the actual rate of interest in the marketplace or, alternatively, the statutory rate of interest because of the delay in receiving the damages and to avoid unjust enrichment to Defendant. Plaintiff also seeks post-

judgment interest at the maximum rate allowed by law in the event that Defendant does not promptly tender damages assessed against it and to avoid unjustly enriching Defendant.

## VI.     JURY DEMAND

75.     Plaintiff requests a trial by jury in this matter.

## VII.     PRAYER

WHEREFORE, premises considered, Plaintiff prays that Defendant be required to appear and answer his Complaint, and that on final trial, Plaintiff be awarded judgment against Defendant for:

a. All liquidated and unliquidated damages to which Plaintiff proves he is entitled pursuant to this Complaint and the causes of action set forth herein, any amendments thereto with interest;

b. Actual damages within the jurisdictional limits of the Court;

c. Exemplary and/or punitive damages as allowed by law.

d. Reasonable and necessary attorney's fees, as allowed by law;

e. Pre and post-judgment interest, as allowed by law;

f. Costs; and

g. Any and all other relief to which Plaintiff may be justly entitled.

Respectfully submitted,

/s/ *Marjorie A. Murphy*
Marjorie A. Murphy
State Bar No. 24013218
Federal Bar No. 34512
The Murphy Law Practice, PLLC
2101 Citywest Blvd, Ste. 100
Houston, Texas 77042
Telephone: (832) 564-3804
Facsimile: (832) 553-7441
Email:marjorie@themurphylawpractice.com
**ATTORNEY-IN-CHARGE FOR PLAINTIFF, TREVOR WRIGHT**